UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MAINE

Civil No.. 21-_____

| | |
|---|---|
| MS. DOE, as parent and next friend of JANE DOE, a minor, | ) ) ) |
| Plaintiff, | ) ) |
| v. | ) |
| VASSALBORO SCHOOL DEPARTMENT, | ) ) ) |
| Defendant. | ) ) |

## COMPLAINT AND DEMAND FOR JURY TRIAL

Plaintiff Ms. Doe, on behalf of her minor child, Jane Doe ("Ms. Doe" and "Jane," respectively) complains against Defendant Vassalboro School Department as follows:

## PARTIES AND JURISDICTION

1.     This action seeks damages against Defendant for its deliberate indifference to Jane's reporting of sexual harassment she experienced in school. Defendant's indifference caused Jane damages and violated both federal and state law.

2.     Plaintiff Ms. Doe is the parent of Jane Doe, a female minor. They are both residents of Vassalboro, Kennebec County, Maine.

3.     Defendant Vassalboro School Department ("Vassalboro") is the Maine public school district serving children in Vassalboro. It operates one school, the

Vassalboro Community School ("VCS"), which provides education for students through eighth grade.

4.     At times relevant to this Complaint, Jane was in the fifth grade at VCS.

5.     This action arises under IX of the Education Amendments of 1972, 20 U.S.C. § 1681 *et seq*. ("Title IX") and the Maine Human Rights Act ("MHRA"), tit. 5 Me. Rev. Stat. §§ 4592(1), 4602(1)(A).

6.     This Court has subject matter jurisdiction of Plaintiff's federal claims pursuant to 28 U.S.C. § 1331.

7.     This Court has supplemental jurisdiction of Plaintiff's state law claims pursuant to 28 U.S.C. § 1367(a).

8.     Venue is proper in this Court under 28 U.S.C. § 1391(b)(2) as "a substantial part of the events or omissions giving rise to the claim occurred" in this District.

9.     Plaintiff has exhausted her administrative remedies. She timely filed charge of Defendant's violation of the MHRA with the Maine Human Rights Commission. The Commission dismissed the charge on July 26, 2021.

## FACTS COMMON TO ALL COUNTS

10.     In September 2019, Jane entered the fifth grade at VCS.

11.     In September 2019, Vassalboro had a Student Discrimination and Harassment Complaint Procedure, as required by Title IX and Maine law. This Procedure stated, in relevant part:

> Any student who believes he/she has been harassed or
> discriminated against may use the following procedure. He/she may

also report incidents of discrimination or harassment to the Maine
Human Rights Commission . . . . [S]tudents shall have access to a
complaint manager of the same sex during the school day and at
other times as arranged by appointment. Students may also report
an allegation of sexual harassment to any teacher or other adult
employed in the school who shall inform a complaint manager of
the allegation. . . . Within 24 hours of receiving the student's
complaint, the complaint manager may notify the complaining
student's parent(s)/guardian(s) and the principal, who may inform
the Superintendent. The parent(s)/guardian(s) may be given notice
of the right to attend an interview of the student in a non-
intimidating environment in order to elicit full disclosure of the
student's allegations. This interview shall take place within five
school days from the time the complaint was first made. If no
parent/guardian attends the interview, another adult, mutually
agreed upon by the student and the complaint manager, shall
attend and may serve as the student's advocate. . . . The complaint
manager will keep the complainant and his/her
parent(s)/guardian(s) informed about the progress of the
investigation. . . . If the complaint manager finds a substantiated
charge of harassment by another student, the offending student
shall be subject to disciplinary action.

12.    In September 2019, Jane said "hi" to a male student, "Student 1." He

replied: "Stop being such a bitch." Jane reported this name-calling to a teacher, who

promised to talk to Student 1 about his behavior.

13.    A couple of days later, Jane saw Student 1 in the hall. He said, "What's

up, Loser?" Jane said, "Please don't call me that; I don't like it." He said,

"Whatever."

14.    The next day at recess, Student 1 came up to Jane and her friend on the

school playground. He said, "What's up, bitch?" Jane asked him to please stop

calling her names, and that she did not like it. Jane and her friend asked to speak

with VCS school counselor, Meg Swanson, and reported Student 1's harassing

3

behavior. Ms. Swanson told the girls she would speak with Student 1 and sent them to their next class.

15.   The following week, Student 1 kept calling Jane names at recess and when he saw her in the hall. He called her names that included "bitch," "asshole," "dumdum," "jerk," "slut," "whore," and "snitch." Jane continued to report his inappropriate behavior to different teachers at VCS, including her classroom teacher and those on duty on the playground. They promised they would talk to Student 1, but Student 1's hostile behavior toward Jane only worsened.

16.   Days later, Student 1 again harassed Jane and her friends by calling them names during recess. Jane reported this behavior to the teacher on duty, who did nothing in response. When Jane entered the VCS building after recess, a teacher asked if she was okay; she replied that she was not okay and requested to go to Ms. Swanson's office, where she reported all of Student 1's inappropriate behavior. Ms. Swanson scheduled a lunch meeting with Jane to have a full discussion of her harassment report.

17.   At the ensuing lunch meeting, Jane reported even more harassing behavior by Student 1 and stated that she no longer felt comfortable around Student 1. Ms. Swanson responded by attempting to justify Student 1's behavior, telling Jane that "boys' brains just function differently than girls' brains." Ms. Swanson also told Jane that Student 1 was having trouble at home.

18.   Without asking Jane's consent, Ms. Swanson brought Student 1 into the office where they were meeting. Student 1's arrival caused Jane great distress and

4

showed a complete lack of respect for Jane's perspective. Jane remained silent, as she did not want to engage in conversation once Student 1 was in the room.

19.     Eventually, Ms. Swanson had Student 1 tell Jane that he was "sorry." He asked if he could hug Jane. Jane was visibly uncomfortable, as she did not want to be hugged by Student 1. Ms. Swanson encouraged the hug, telling Jane "that's the way we do things around here." Not knowing what to do, Jane shrugged her shoulders. Student 1 leaned in and awkwardly hugged her, making her even more uncomfortable.

20.     On her way back to class, Jane rushed into the bathroom to calm herself down. Ms. Swanson's deliberate indifference towards her feelings and perspective had caused her significant emotional distress.

21.     After the hugging incident in Ms. Swanson's office, Student 1 began inappropriately touching Jane. The week after the hug, Student 1 slapped Jane on her behind when they were lining up for recess. She told him not to touch her there again.

22.     The next day at recess, Student 1 was obnoxious and mean to Jane and her friends. He called them names like "slut" and "asshole." Later that day, he appeared from out of nowhere and began hugging Jane from behind, touching and grabbing her chest. This incident also caused Jane severe emotional distress. She told Student 1 not to do that again, as it made her feel very uncomfortable. Student 1 replied: "Whatever—see you at lunch." Frightened about her next

encounter with Student 1, Jane reported his physical assault to the teacher on duty, who replied that she would talk to Student 1.

23.     The very next day, when Jane and another female student were at a water fountain, Student 1 came over and slapped both of their behinds. They immediately went to the art teacher, Ms. Briggs, to report the behavior.

24.     The day after that, Jane and other female students were playing on the basketball court when Student 1 appeared and started calling them "sluts," "whores," and "assholes," before angrily throwing a basketball at them when they told him to stop. Further frightened by Student 1's behavior, Jane and her friends quickly approached the closest teacher on duty to report what happened.

25.     A few days later, Student 1 called Jane and her friend "whores" when they refused to play tag with him. When Jane told him not to use that word, he pushed her so hard to the ground that her knee began bleeding. He yelled, "Shut up or I'm going to kill you!" Then he slapped the behind of Jane's friend and ran away laughing.

26.     After Jane picked herself up off the ground and saw her bloody knee, she asked to see the nurse. When she and her friend were in the nurse's office, Jane asked to speak to the principal. The nurse said the principal was busy and that the girls could tell her whatever they wanted to say.

27.     Jane then recounted in detail all of Student 1's hostile behavior that she and her friends had endured thus far, including his threat to kill her. She told the nurse that she and her friends did not feel safe at school with Student 1 around.

The nurse took multiple pages of notes on a yellow pad. When Jane and her friend asked to go home early, the nurse denied their request, saying there were only a couple of hours remaining in the school day, explaining "if we let everyone go home when they ask, we would have no one left in school." This comment upset Jane and illustrated VCS's deliberate indifference to the harassment Jane had been facing.

28.     The next day, Student 1 again slapped Jane on the behind while they were lining up to come in from recess. Once again, Jane reported his behavior to a teacher.

29.     The day after that, Student 1 called Jane a "slut" and a "snitch" during a basketball game in gym class. Jane tried to ignore Student 1. During free time at the end of class, Student 1 called Jane a "bitch" and she became very angry, asking to see the VCS principal, Megan Allen. Jane noticed the gym teacher, Mr. West, following her to the principal's office. He stood in the doorway and scolded Jane for going to the principal to make a report. In the past, Jane had made reports to Mr. West, but he had ignored her.

30.     Jane spoke with the principal and described Student 1's long pattern of harassing behavior, explaining that she had repeatedly reported his behavior to VCS staff, to no avail. It became apparent to Jane that the nurse had not shared what she and her friend had reported days before. The principal said she would talk to Student 1.

31.    The next day, the principal told Jane that Student 1 was sorry and did not mean to hurt her feelings. Jane tried to explain to the principal that this was a consistent pattern of behavior for Student 1 and that his apology meant nothing.

32.    Later that day, true to form, Jane and Student 1 were involved in an "emoji challenge" in math class, for which everyone received a yellow emoji doll. Student 1 ripped the head off his doll and threatened her by saying, "Look, [Jane], it's you!"

33.    The next day, Jane reported the emoji doll incident to the principal. Soon afterward, Student 1 approached Jane. He stated that if Jane ever told a teacher on him again, he would kill her. Jane was terrified, but reported his behavior to a teacher anyway. The principal ultimately called Jane and one of her friends to the main office, where they reported Student 1's most recent threat. A few days later, the principal called Jane and her friends to her office to give them apology cards from Student 1, who had spent some time out of classes and in the main office. The girls all told Principal Allen that they did not accept Student 1's apology.

34.    By now it was early November 2019. When Jane learned that her mother would be attending a meeting with the principal about an unrelated topic, she decided to recount everything that had been happening with Student 1 to her mother. Ms. Doe promptly emailed the school in horror over what she had learned about her daughter's experiences at school.

35.    Facing a complaint from Ms. Doe, Defendant finally took action by removing Student 1 from school and commencing an investigation.

8

36.   Defendant learned the following as a result of its investigation:

a.   Four (out of six female fifth graders interviewed) stated Student 1 had touched them inappropriately;

b.   Those four female students stated that Student 1 had touched their breasts;

c.   Three female students interviewed stated Student 1 had touched their behinds;

d.   One female student interviewed stated Student 1 had touched her "upper leg";

e.   One female student interviewed stated she had seen Student 1 touch another female student's behind in the hallway;

f.   All six female students interviewed stated they were aware that Student 1 had inappropriately touched others.

37.   In a submission to the Maine Human Rights Commission, Defendant represented that "when the School learned of the serious allegations against Student 1, School officials removed him from school immediately." This statement is false: Jane repeatedly made reports of Student 1's sexually harassing behavior during September and October 2019, to no avail. It was not until Ms. Doe sent an email to VCS on November 7, 2019 that Defendant finally removed Student 1 from school and began an investigation.

38.   By ignoring Jane's multiple reports and failing to investigate and take effective remedial action sooner, Defendant acted with deliberate indifference toward Jane's reporting of Student 1's harassment.

39.   Defendant's deliberate indifference is evidenced by Defendant's minimizing her complaints by VCS staff, justifying Student 1's harassing behaviors (*e.g.,* "boys' brains just function differently than girls' brains"), encouraging Jane to hug Student 1 to make her feel better, and forbidding Jane from going home after being physically assaulted by Student 1. Defendant never gave Jane's reports the weight and attention they are obligated to provide under federal and state law, and under its own sexual harassment policy.

40.   Defendant eventually came up with a plan for Student 1 to stay away from Jane in school, promising Jane that he would have 1:1 supervision at all time while at school. However, after a teacher allowed Student 1 to overlap with Jane at recess, and after Student 1 later approached Jane in the science room without adult supervision, Jane lost trust in the school's ability to keep her safe. She ultimately switched schools and no longer attends VCS.

41.   Defendant's deliberate indifference to the harassment Jane experienced caused her severe emotional distress and damage.

## COUNT I
### (Violation of Title IX: Hostile Educational Environment)

42.   Plaintiff repeats the allegations contained in paragraphs 1 through 41.

43.   Defendant created and/or subjected Jane to a hostile educational environment in violation of Title IX, in that (i) Jane was a member of a protected

class; (ii) Defendant had actual knowledge of Student 1's sexually harassing behavior against Jane; (iii) the sexually harassing behavior occurred in the context of Defendant's educational programs and activities; (iv) the sex-based harassment of Jane was so severe, pervasive, and objectively offensive as to deprive her of access to educational opportunities and benefits provided by Defendant; and (v) Defendant was deliberately indifferent to the harassment, such that its lack of response was clearly unreasonable in light of the known circumstances.

44.    Jane has suffered damages, including interference with her educational opportunities and severe emotional distress, as a direct and proximate result of Defendant's violation of her Title IX rights.

**COUNT II**
**(Violation of the Maine Human Rights Act:**
**Hostile Educational Environment)**

45.    Plaintiff repeats the allegations contained in paragraphs 1 through 44.

46.    Defendant violated the Maine Human Rights Act because it knew or should have known about Student 1's objectively hostile, harassing, and abusive conduct toward Jane during September and October 2019, yet failed to implement prompt and appropriate action.

47.    A reasonable student of the same age, maturity level, and protected characteristic as Jane would consider Student 1's behaviors to be sufficiently severe and pervasive enough to create an intimidating, hostile, or offensive school environment.

11

48.    As detailed above, Jane personally reported Student 1's hostile behavior to numerous teachers and administrators at VCS on many different occasions prior to her mother's email of November 7, 2019, yet Defendant responded only with deliberate indifference to her reporting activity.

49.    In making her numerous reports, Jane demanded to receive an education free of both physical and verbal harassment from Student 1. Jane clearly told Defendant that Student 1 assaulted her, as detailed above.

50.    In violation of Maine law and its own Student Discrimination and Harassment Complaint Procedure, Defendant responded to Jane's reports by encouraging her to hug her harasser and by failing to undertake a proper investigation or to initiate effective remedial action.

51.    Vassalboro's indifference to Jane's reporting activity caused her to suffer severe damages, including loss of educational opportunities and severe emotional distress.

WHEREFORE, Plaintiff respectfully requests that the Court enter judgment in her favor against Defendant Vassalboro School Department, and award her, for the benefit of Jane Doe, the following relief:

a.  Compensatory and civil penal damages in an amount that is reasonable in the premises;

b.  Reimbursement of her reasonable attorney's fees and costs; and

c.  Such other relief as the court may deem just and proper.

## JURY DEMAND

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff

demands a trial by jury of all issues so triable.

Dated:  October 7, 2021.

*/s/ Richard L. O'Meara*
Richard L. O'Meara
MURRAY, PLUMB & MURRAY
75 Pearl Street, P.O. Box 9785
Portland, ME  04104-5085
(207) 773-5651
*E-mail:  romeara@mpmlaw.com*

Counsel for Plaintiff